**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT B. GOLBECK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 16-cv-6788 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| JOHNSON BLUMBERG & ASSOCIATES, | ) | |
| LLC, JPMORGAN CHASE BANK, N.A, and | ) | |
| SETERUS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant JPMorgan Chase Bank, N.A.'s motion to dismiss [62] and Defendant Seterus, Inc.'s motion to dismiss [69]. For the reasons set forth below, Defendants' motions [62; 69] are granted. For those claims that are not dismissed with prejudice, Plaintiff is given until August 18, 2017, to file a second amended complaint.

**I.      Background**

In April 2013, Plaintiff Robert Golbeck executed a mortgage and promissory note with Defendant JPMorgan Chase Bank, N.A. ("Chase") secured by his property in West Dundee, Illinois. [60, ¶ 9.] The note was payable in monthly installments of $1,332.48. *Id.* The mortgage required an escrow account for payment of property taxes and homeowner's insurance premiums (*id.* ¶ 10), but Chase initially waived that requirement (*id.* ¶ 11). In January 2014, Plaintiff defaulted on his monthly mortgage payment obligations. *Id.* ¶ 13.

In July 2014, Chase offered Plaintiff a trial payment plan as a means to modify his mortgage. [60-4.] That plan offered three "steps to qualify for a permanent modification": (1) make a first trial period payment of $1,175.92 by August 1; (2) make second and third payments of this amount on September 1 and October 1; and (3) "[a]fter all trial period payments are made

on time, sign and return the final modification agreement." *Id.* at 1. The letter states "[o]nce the modification is final, we will reduce your monthly payment to a new lower amount for the remaining term of your loan, which may be slightly higher than the trial period payments because of your monthly escrow payment for taxes and insurance." *Id.*

This July letter also attaches several enclosures, including a frequently asked questions section and a legal notices section. One frequently asked question listed is "When will I know if my mortgage can be modified permanently and how will the modified loan balance be determined?" [60-4, at 6.] The answer states, "Once you make all of your trial period payments on time, we will send you a modification agreement detailing the terms of the modified loan. The modification agreement will become effective once you and we have signed it." *Id.* Another question is "Will my interest rate and principal/interest payment be fixed after my loan is permanently modified?" *Id.* at 7. The answer provided is:

> Once your loan is modified, your interest rate and monthly principal and interest payment will be fixed for the life of your mortgage. Your new monthly payment will also include an escrow for property taxes, hazard insurance and other escrowed expenses, but your servicer will separately notify you of the escrow amount to include with your monthly payment.

*Id.*

The legal notice section also discusses escrow accounts. It reads: "If your monthly payment did not include escrows for taxes and insurance, you are now required to establish an escrow account for these items. You agree that any prior waiver that allowed you to pay directly for taxes and insurance is revoked. You agree to establish an escrow account and to pay required escrows into that account." [60-4, at 8.] Similar information appears in the frequently asked question section:

> If you did not have an escrow account before, you will be required to establish an escrow account for the payment of such escrow amounts. The timing of your tax and insurance bills may require that you make a payment to cover any such bills

when they come due. This is known as an escrow shortage, which your loan currently has. This can either be paid in a lump sum when the loan is modified or over the next five years (60 months).

*Id.* at 6.

Plaintiff timely made the three $1,175.92 payments requested in the July letter. [60, ¶ 16.] On November 14, 2014, Chase advised Plaintiff that it would be transferring the servicing of his mortgage to Defendant Seterus, Inc. ("Seterus"), effective December 1, 2014. [60-5.] That letter directed Plaintiff to send any payments to Seterus after December 1, and stated that "Chase will no longer accept your payments." *Id.* at 3. This letter also included a frequently asked question section. Two questions are relevant here:

**I'm in the middle of a loan modification. Will my modification be completed first?**

No, your new servicer will continue the modification process of your loan. For more information about your current modification status, please call your dedicated Customer Assistance Specialist.

**When should I begin making payments to my new servicer?**

As of the effective transfer date listed in this letter, Chase can no longer accept or process your loan payments. Any payments we receive after this date will be forwarded to your new servicer for up to 60 days. If you mail your payments or make your payments online, and:

> Your payment due date falls before the effective date, please send the payment to us.

> Your payment due date falls on or after the effective date, please send the payment to your new servicer.

Please refer to the payment and contact information section in this letter for payment addresses and additional payment information.

*Id.* at 5.

On November 20, 2014, Chase sent Plaintiff another letter regarding his loan modification, this time attaching two copies of a permanent loan modification agreement ("LMA") and a summary of its terms. [60-6.] The letter stated that "[u]pon full execution of the

Modification Agreement, [Chase] will waive all previous late charges that remain unpaid." *Id.* at 2. The letter directed that "[t]o accept this offer for a permanent mortgage modification," Plaintiff was to "[s]ign and send both copies of the Modification Agreement to us in the enclosed, prepaid envelope by DECEMBER 02, 2014." *Id.*

The LMA provides that Plaintiff's monthly principal and interest payments would be $1,150.40, with the first payment due January 1, 2015. *Id.* at 5. Paragraph 7 of the agreement states that "Lender is notifying the borrower that any prior waiver by the Lender of the Borrower's obligation to pay to the Lender Funds for any or all Escrow Items is hereby revoked, and the Borrower has been advised of the amount needed to fully fund the Escrow Items." *Id.* at 7. The next paragraph provides that "[t]he Lender may waive the Borrower's obligation to pay to the Lender Funds for any or all Escrow Items at any time," but "[a]ny such waiver may only be in writing." *Id.* at 8. If such waiver occurred, Plaintiff remained responsible to pay directly the amounts due for any escrow items. *Id.* The last two pages of the LMA are signature pages, with one page for Plaintiff and another for Chase. *Id.* at 9–10. Only Plaintiff's signature appears on the LMA. Plaintiff does not allege that Chase or Seterus ever signed the LMA.

The summary enclosed with the LMA and the November 20 letter includes the following additional details about Plaintiff's mortgage:

> NEW/UNPAID PRINCIPAL BALANCE. Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. If you fulfill the terms of the trial period including, but not limited to, making any remaining trial period payments, we will waive ALL late charges that have accrued and remain unpaid at the end of the trial period.
>
> * * *
>
> ESCROW ACCOUNT. The terms of your Loan Modification Agreement require that you pay into an escrow account an amount sufficient to cover your property taxes, insurance premiums and other required fees. Any prior waiver of escrows by your lender is no longer in effect. We will draw on this account to pay your

4

real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that we must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be $591.42. This amount is not included in the loan payment noted in Section 2 of the enclosed Loan Modification Agreement; you must remit this amount separately.

ESCROW SHORTAGE. Due to the timing of your tax and insurance payments, we have determined that there is a shortage of funds in your escrow account in the amount of $31.30. This amount shall be repaid over a 5-year (60-month) period. This payment has been included in the monthly escrow payment stated above. If you wish to pay the total shortage now in a lump sum, please contact us. Paying this amount now in a lump sum will reduce your new monthly mortgage payment.

*Id.* at 4.

On December 1, 2014, Plaintiff submitted a $1,175.92 payment to Chase. [60-7.] Plaintiff alleges on "information and belief, Chase failed to promptly transfer [this] payment to Seterus" or return it to Plaintiff. [60, ¶ 24.] Instead, Chase allegedly kept the payment for itself. Plaintiff alleges that in December and January, Seterus sent him multiple letters and an account statement that "fail[ed] to acknowledge the Modification Agreement," indicated that Plaintiff remained in default, stated that he continued to owe monthly payments of $1,332.48, and listed an escrow account balance of $0.00. *Id.* ¶¶ 25–27.

On December 26, 2014, Plaintiff called Seterus about the LMA, but "Seterus informed [Plaintiff] that it had no record of the [LMA] and suggested that [Plaintiff] tender payment in the amount of $1,332.48." [60, ¶ 28.] Plaintiff instead tendered a payment of $1,150.42 to Seterus on December 30, 2014. *Id.* ¶ 29. After receiving additional communications from Seterus that refused to recognize the LMA, Plaintiff contacted Chase on January 13, 2015 at 4:20 p.m. *Id.* ¶ 31. The next day, Chase called him back and told him that it had located the LMA, faxed it to Seterus, and "communicated with an Assistant Vice President at Seterus who ensured that the situation would be resolved." *Id.* ¶ 32. Despite this alleged conversation, Seterus did not

recognize the LMA as altering Plaintiff's mortgage.  [60, ¶¶ 33, 41.]  Seterus also apparently made at least four other offers to modify Plaintiff's loan, but Plaintiff did not accept any of those offers.  *Id.* ¶¶ 34–37, 40.  Nevertheless, Plaintiff continued to make monthly payments in the amount of $1,150.42 to Seterus between December 2014 and September 2016.  *Id.* ¶ 42 (at 10).[1]

On March 10, 2016, Plaintiff sent Seterus a Request for Information pursuant to 12 C.F.R. § 1024.36(c) about his mortgage.  [60, ¶ 42.]  On March 16, 2016, he mailed Seterus a Notice of Error pursuant to 12 C.F.R. § 1024.35(b)(11), which stated that he was current on his mortgage and had "made every payment on time and for the exact amount listed on the loan modification documents [he] received from Chase."  [60-13, at 3.]  On April 29, Seterus responded by indicating that (1) Plaintiff's loan was "past due for the August 1, 2014 installment and each subsequent installment" when it was transferred to Seterus from Chase in December 2014; (2) Seterus's "records" showed that "any modification * * * which may have been offered by [Chase] was not executed prior to the service transfer of the loan"; (3) Fannie Mae owns Plaintiff's loan and contracted with Seterus to "service and respond to inquiries about the loan" and "take all necessary steps, including * * * acceptance of payments, loss mitigation efforts, and if necessary initiation of foreclosure as a result of default"; and (4) Plaintiff's loan "remains contractually delinquent," listing the balances owed including an $825.27 deficient balance for the "escrow account."  [60-14.]

On April 29, 2016, Defendant Johnson Blumberg and Associates mailed Plaintiff a validation of debt letter pursuant to 11 U.S.C. § 1692g, after which Seterus and Johnson Blumberg allegedly threatened to foreclose on Plaintiff's mortgage.  [60, ¶¶ 45, 52.]  Plaintiff alleges that Defendant's mistakes, breaches, and the threat of losing his home proximately caused him to suffer anxiety, depression, economic damages (such as interest, late charges,

---

[1] The Amended Complaint has two paragraphs numbered "42."  [See 60, at 10–11.]

default fees, foreclosure costs, medical bills, and misapplied funds), inconvenience, mental anguish, and physical injury (a skin rash and cough-induced hernia as a result of a bad reaction to anti-anxiety and anti-depression medication). *Id.* ¶¶ 54–58. Based on this course of conduct, Plaintiff filed an eight-count amended complaint raising claims for breach of contract against Chase and Seterus (Counts I and II), violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") against Johnson Blumberg and Seterus (Counts III and IV), violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") against Chase and Seterus (Counts V and VI), and violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA") against Chase and Seterus (Counts VII and VIII). Defendant Johnson Blumberg answered Plaintiff's amended complaint [61], while Defendants Chase and Seterus separately moved to dismiss all of the claims against them (*i.e.*, every count except Count III) [62; 69].

## II.     Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper

"when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim" and "may be considered by the district court in ruling on the motion to dismiss * * * without converting [it] to a motion for summary judgment." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

## III.     Analysis

### A.          Breach of Contract Claims (Counts I and II)

Plaintiff raises distinct breach of contract claims against Chase and Seterus. Against Chase, Plaintiff alleges that it breached (1) the underlying mortgage "by claiming an escrow shortage of $31.30" even though it had waived the requirement to establish an escrow account; and (2) the LMA by (i) "failing to recognize its existence and/or failing to transfer it to Seterus" and (ii) "failing to properly apply [Plaintiff's] December 1, 2016 payment."[2] [60, ¶¶ 58–62.] Against Seterus, Plaintiff alleges that it breached the LMA by (1) "failing to properly apply [his] December 1, 2016 payment"; (2) not honoring the LMA; (3) failing to apply Plaintiff's payments; (4) erroneously treating Plaintiff as if he was in default; and (5) "continually assessing late charges and default fees." *Id.* ¶¶ 66–71. All of these permutations fail.

To state a claim for breach of contract in Illinois, "a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *TAS Distrib. Co. v. Cummins Engine Co.*,

---

[2] Plaintiff likely meant December 1, 2014.

491 F.3d 625, 631 (7th Cir. 2007) (citation and internal quotation marks omitted). "In Illinois, an offer, an acceptance and consideration are the basic ingredients of a contract." *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 151 (2006). The test for whether an offer has been made is "whether it induces a reasonable belief in the recipient that he can, by accepting, bind the sender." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 561 (7th Cir. 2012) (citation and internal quotation marks omitted).

### 1.    Breach of the Mortgage

Chase argues that Plaintiff cannot pursue a breach of contract claim concerning his mortgage for three reasons. First, Plaintiff expressly pled that he had "defaulted" on his mortgage by failing to meet his monthly payment obligations [60, ¶ 13], which means he has not substantially performed under the contract. See, *e.g.*, *Hartford Fire Ins., Co. v. Henry Bros. Constr. Mgmt. Servs., LLC*, 2014 WL 4269057, at *7 (N.D. Ill. Aug. 28, 2014) ("[W]hen a party materially breaches a contract, the non-breaching party is excused from its obligations to perform"). Second, there was no breach when Chase claimed a $31.30 escrow shortage. Plaintiff's mortgage permits Chase to estimate escrow amounts due even though the requirement to establish an escrow account has been waived. [See 60-1, ¶ 8 ("Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items").] Likewise, federal regulations permit Chase to estimate projected escrow amounts, to provide an escrow "cushion" no greater than one-sixth the estimated total annual payments, and to require payment of any estimate escrow shortage over at least a twelve-month period. See 12 C.F.R. § 1024.17. Plaintiff also overlooks the fact that this escrow shortage statement appears in the same summary that states, "Any prior waiver of escrows by your lender is no longer in effect." [60-6, at 4.] Third, Plaintiff fails to identify any damages from the

alleged breach of his mortgage from being told that he had a $31.30 escrow shortage. That amount was folded into his "monthly escrow payment" of $591.42. *Id.* But Plaintiff *never* made escrow payments to Chase or Seterus. His only post-2014 payments were for $1,150.40—the amount representing his new principal and interest payments under the LMA. [60-6, at 4.]

Plaintiff does not respond to *any* of these arguments. [See 74, at 7–12.] "A party's failure to respond to arguments the opposing party makes in a motion to dismiss operates as a waiver or forfeiture of the claim and an abandonment of any argument against dismissing the claim." *Jones v. Connors*, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012). "The federal courts will not invent legal arguments for litigants"; "the non-moving party must proffer some legal basis to support his cause of action" when faced with a motion to dismiss. *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995) (internal citations omitted). "[B]y failing to respond responsively to the motion to dismiss * * * [P]laintiff forfeited [his] right to continue litigating [his] claim." *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1043 (7th Cir. 1999). Because Plaintiff entirely failed to respond to any of Chase's arguments, Count I is dismissed with prejudice to the extent it is predicated on a breach of Plaintiff's mortgage. Accord *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016); *Streeter v. Semtech Corp.*, 2016 WL 6395573, at *3 (N.D. Ill. Oct. 28, 2016).

## 2.    Breach of the LMA

Both Chase and Seterus advance the same two arguments against Plaintiff's breach of LMA claim: (1) there was never an enforceable contract because Chase did not sign the LMA; and (2) Plaintiff failed to perform (if a contract was formed) when he did not make the required escrow payments. Defendants also challenge the specific breaches asserted against them. The Court agrees that each of these arguments show that Plaintiff has failed to state a claim.

Plaintiff contends that the July 14, 2014 letter provides "three conditions precedent to Chase's obligation to offer a permanent modification agreement." [74, at 7.] Plaintiff was required to make the first $1,175.92 trial period payment by August 1, 2014, make the next two payments in September and October, and then sign and return the LMA—all of which Plaintiff did. *Id.* According to Plaintiff, these were the only conditions to accept Chase's offer. As a result, Plaintiff argues Chase's signature was not required for the LMA to take effect, and he has plausibly stated a claim for breach of contract. *Id.*

Plaintiff's interpretation ignores everything in Chase's July 14 letter showing there were more than three prerequisites to qualify for a loan modification. To start, the letter frames the three items on the first page as the "*next* steps to *qualify* for a permanent modification." [60-4, at 2 (emphasis added).] It does not say these are the *only* conditions that, once satisfied, will result in the loan's modification. The letter also imposes several other requirements for modification. One condition described in the "frequently asked questions" section was that Plaintiff could not misrepresent his financial status. *Id.* at 6. Another was that Plaintiff was required to establish an escrow account. *Id.* at 6, 8. And the letter states that the "modification agreement will become *effective* once [Plaintiff] *and* [Chase] have signed it." [60-4, at 6 (emphasis).] This dual execution requirement is clearly stated and consistent with the conclusion that there were more than three conditions presented in this letter. Plaintiff does not offer any other interpretation of this signature language and he cannot read this requirement out of Chase's "offer."

Plaintiff seeks refuge in the language of Chase's November 20 letter. He emphasizes that the LMA itself "is silent as to a signature requirement" and the November letter merely states "[t]o accept this offer for a permanent mortgage modification * * * sign and send both copies of the [LMA] to us * * *." [74, at 8; 60-6, at 6.] But the LMA is not silent. It includes one page

"to be signed by borrower only" and another "to be signed by lender only." [60-6, at 9–10 (capitalization altered).] Plaintiff does not explain why a signature page for Chase exists if its signature is not required or what other purpose this language serves. A signature page for the "lender only" expressly contemplates the lender's signature as part of the agreement. Furthermore, the November 20 cover letter itself states "[u]pon *full execution* of the [LMA], we will waive all previous late charges that remain unpaid." *Id.* at 2 (emphasis added). If only one party's signature was required for this agreement to take effect, the reference to "full execution" is largely meaningless. The July 14, November 20, and the LMA—whether read in isolation or together—all demonstrate that execution by both parties was required for the LMA to take effect.

Plaintiff cites *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012), to show that neither Defendant's signature was required for acceptance. [74, at 11.] But *Wigod* is no help to Plaintiff because the defendant in *Wigod* "countersigned" the trial payment plan "and mailed a copy to [plaintiff] with a letter congratulating her on her approval for a trial modification." *Id.* at 562. The Seventh Circuit explained that "when [defendant] executed the [trial period plan or 'TPP'], its terms included a unilateral offer to modify [plaintiff's] loan conditioned on her compliance with the stated terms of the bargain." *Id.* Thus, it was the lender's signature that made the TPP a binding offer that could be accepted through performance. That is because "when the promisor conditions a promise on *his own* future action or approval, there is no binding offer," but "when the promise is conditioned on the performance of some act *by the promisee* or a third party, there can be a valid offer." *Id.* at 561. Numerous courts have reached the same result.[3] The fact that some contracts have language requiring the

_____

[3] See, *e.g.*, *Pennington v. HSBC Bank USA, N.A.*, 493 F. App'x 548, 554 (5th Cir. 2012) ("[Plaintiff's] contract contained the * * * language * * * that the TPP does not take effect until the borrower and the lender sign it and the lender provides the borrower a signed copy. * * * [Plaintiffs] made regular TPP payments, but they neither produced such a signed contract nor allege such a signed contract exists. * * *

lender to mail back a copy of the executed TPP does not displace the specific requirement expressed throughout Chase's correspondence that both parties were required to execute the LMA for it to take effect.[4] And the fact that Chase's letter uses the term "accept" is insufficient by itself to deem these letters a binding offer notwithstanding other language. See, *e.g.*,

---

The complaint therefore does not demonstrate that the [plaintiff's] TPP ever took effect, so there could be no contract for the bank to breach."); *McGann v. PNC Bank, Nat. Ass'n*, 2013 WL 1337204, at *6 (N.D. Ill. Mar. 29, 2013) ("Here, the plain language of the TPP Agreement states [defendant] is not obligated to provide a [housing] loan modification until both parties execute the TPP Agreement, stating that, 'This Plan will not take effect unless and until both I and the Lender sign it and [the] Lender provides me with a copy of this Plan with the Lender's signature.' * * * Pursuant to the TPP Agreement's own terms, [defendant] failure to sign the agreement evidences that it had no obligation to offer [plaintiff] a [housing] loan modification."); *Baehl v. Bank of Am., N.A.*, 2013 WL 1319635, at *12 (S.D. Ind. Mar. 29, 2013) ("Although the same loan language is present in the modification here, a critical distinction exists—the servicer in *Wigod* countersigned the Plan and mailed a copy back to the borrower with a letter congratulating her on her approval for a trial modification."); *Brinson v. Bank of Am., N.A.*, 2013 WL 147835, at *5 (D. Alaska Jan. 13, 2013) ("The TPP, however inartfully or clumsily, merely invites plaintiff to apply for a loan modification. The requirement that the TPP be countersigned indicates that [defendant] planned to make a further manifestation of assent before there could be a valid offer[.] * * * Because [defendant] never sent plaintiff a signed copy of the TPP, the court cannot conclude that [defendant] intended to be bound, and thus the TPP never ripened into an offer."); *Avevedo v. CitiMortgage, Inc.*, 2012 WL 3134222, at *8 (N.D. Ill. July 25, 2012) ("The court agrees with [defendant] that the fact that it did not execute the TTP associated with the plaintiffs' loan and return that document to them is fatal to the plaintiffs' breach of contract claim."); *Rummell v. Vantium Capital, Inc.*, 2012 WL 2564846, at *6 (E.D. Mich. July 2, 2012) ("[T]he TPP is only a proposal, and it does not create a binding contract when only one party has signed it."); *Soin v. Fed. Nat. Mortg. Ass'n*, 2012 WL 1232324, at *5 (E.D. Cal. Apr. 12, 2012) ("Here, unlike in *Wigod*, plaintiffs have submitted a copy of the TPP signed by them only. It does not appear that [defendant] returned an executed copy of the TPP or determined that plaintiffs were qualified to receive a permanent modification. * * * [W]ithout an offer for a permanent modification, there was no contract for a permanent modification for defendants to breach."); *Brady v. Chase Home Fin., LLC*, 2012 WL 1900606, at *7 (W.D. Mich. May 24, 2012) ("By providing an executed copy to the borrower, the lender extends an offer and must provide a modification if the borrower complies with her obligations. Conversely, no offer exists if the lender fails to provide the borrower a signed copy."); *Lonberg v. Freddie Mac*, 776 F. Supp. 2d 1202, 1209 (D. Or. 2011) ("[E]very court that has reviewed this issue has unanimously agreed that a defendant's failure to provide a permanent loan modification solely on the basis of the existence of a TPP does not sufficiently state a breach of contract claim." (collecting cases)).

[4] Plaintiff submitted *Khan v. OneWest Bank, F.S.B.*, 2017 WL 1344535 (N.D. Ill. Apr. 12, 2017), as supplemental authority [78]. In that case, the lender eventually signed the loan modification agreement, which made it "retroactively effective" and sufficient for plaintiff to state a claim for breach. *Id.* at *5. The court in *Khan* also sought to distinguish the loan modification agreement itself from the loan's actual modification in light of particular loan document provisions. *Id.* at *4–5. Whatever that distinction's merit, Plaintiff does not explain how it applies here where Plaintiff's claim is that the terms of his loan were modified without either Defendant's signature. [60, ¶ 70 ("Seterus breached the Modification Agreement by treating [Plaintiff's] mortgage loan as if it was in default even when it was not.").]

*Avevedo*, 2012 WL 3134222, at *2 ("accept this offer"). Because Chase was required to execute the LMA and it did not, no contract was formed and Plaintiff has no breach of contract claim.

Even assuming that Plaintiff could show that a contract had been formed, Plaintiff has not pled his substantial performance of the LMA. Plaintiff did not establish an escrow account and does not allege that he ever made the $591.42 monthly escrow payments. [60, ¶ 42 ("Unfailingly, [Plaintiff] tendered payments in the amount of $1,150.40"—the amount required to cover his unpaid principal balance and interest each month).] The escrow account requirement was described multiple times in the July 2014 letter [60-4] and referenced again in the LMA summary [60-6, at 4]. The LMA expressly "revoked" the prior waiver of the obligation to establish an escrow account and Plaintiff, by executing the agreement, stated that he was "advised of the amount needed to fully fund the Escrow Items." [60-6, at 7.] The fact that Plaintiff "[u]nfailingly" failed to tender more than a third of his monthly required payment for more than a year is sufficient to show that he did not substantially perform under the LMA.

Plaintiff's only response to this argument is that "Defendants appear to have waived this provision requiring resumption of escrow payment" because "Defendants accepted seventeen payments from" him. [74, at 12.] "In Illinois, waiver is the voluntary and intentional relinquishment of a known right." *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1140 (7th Cir. 2009). Because Plaintiff does not allege express waiver, he must allege facts sufficient to plausibly claim that both Defendants' waivers can be implied. Waiver "may be implied from the conduct, acts or words of the party who is alleged to have waived a right." *Id.* "An implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent with any other intention than to waive it." *Id.* (citing *Ryder v.*

14

*Bank of Hickory Hills*, 146 Ill. 2d 98, 105 (1991)). To show implied waiver, "the act relied on to constitute the waiver must be clear, unequivocal and decisive." *Id.*

Plaintiff does not plead *any* facts suggesting an implied waiver by Chase. All seventeen of these payments were made after Chase transferred servicing of the loan to Seterus. [60, ¶¶ 18, 42.] Plaintiff does not explain how Chase could have impliedly waived the escrow payment requirement where none of these payments were made to or accepted by Chase. That is insufficient to show a clear, unequivocal, and decisive waiver through Chase's conduct.

With respect to Seterus, Plaintiff argues that "waiver may be established by conduct indicating that strict compliance with the contractual provisions will not be required." [74, at 12.] Plaintiff does not mention that his mortgage provides that a waiver of the escrow account requirement "may only be in writing" [60-1, at 5] and the LMA expressly revoked the prior waiver [60-6, at 4, 7]. To the extent he argues that waiver can by shown by Seterus's acceptance of Plaintiff's deficient payments, Plaintiff's mortgage expressly allows the lender to accept "partial payments * * * without waiver of any rights." [60-1, at 4; see also *id.* at 11–12 ("Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments * * * in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.").] Based on the terms of his mortgage, Seterus's acceptance of this half-loaf did not ratify the LMA or waive his required escrow payments.[5] See *McGann*, 2013 WL 1337204, at *6 (finding no acceptance where defendant

---

[5] Plaintiff also emphasizes that his "mortgage statements" did not reflect any escrow amount due. [74, at 12.] That is entirely consistent with Seterus' repeated statements that it did not recognize the LMA [see, *e.g.*, 60, ¶ 28], which meant his original waiver of the escrow account remained in effect but there was no modification. Cf. *Kane v. Am. Nat. Bank & Trust Co.*, 21 Ill. App. 3d 1046, 1052 (1974) ("An implied waiver may arise * * * where his conduct is inconsistent with any other intention than to waive it."). Indeed, Plaintiff's mortgage statements continued to show that his monthly payments should be $1,332.48 [60-10]—his original payment amount [60, ¶ 9]. Plaintiff does not explain how these statements show that Seterus accepted the LMA's validity but intentionally waived the LMA's escrow requirements.

"continued to accept [plaintiff's] reduced mortgage payments after the TPP period ended" because plaintiff "still owed [defendant] monthly payments pursuant to the note"); *Pennington*, 493 F. App'x at 555 ("Although the bank's acceptance of the trial payments from the [plaintiffs] lends some support to finding that the parties intended to be bound, that weight is reduced, because the [plaintiffs] already owed regular payments."). Thus, Plaintiff remained in default and cannot sue for breach.

Plaintiff also faces problems when it comes to the specific breaches he identifies. A claim for breach of contract must "allege[ ] enough facts to put [a defendant] on fair notice of the 'contractual duty' it breached." *Peerless Network, Inc. v. MCI Commc'n Servs.*, Inc., 2015 WL 2455128, at *7 (N.D. Ill. May 21, 2015). Regarding his claim against Chase, Plaintiff does not identify any provision of the LMA that required Chase to "recognize its existence" or "transfer it" to another servicer. Plaintiff also does not identify any contractual provision that required Chase to "apply" his December 2014 payment, since the first payment was due on January 1, 2015 and Chase transferred the loan to Seterus on December 1, 2014. Plaintiff failed to counter any these arguments in his response. The same is true regarding Seterus's arguments that all of the charges and fees were authorized by Plaintiff's mortgage because he was in default. [70, at 7.] Again, Plaintiff admitted he was in default [60, ¶ 13] and does not claim that he ever made the $591.42 in monthly escrow payments required under the LMA. Plaintiff has failed to allege sufficient facts showing it was plausible that he was not in default and any fees and charges assessed against him were in breach of his contract. Counts I and II are dismissed.

### B. FDCPA (Count IV)

Plaintiff alleges that Seterus violated a host FDCPA provisions, but all of these violations are predicated on the LMA's existence and his full compliance with its terms. Plaintiff alleges

16

that Seterus violated 15 U.S.C. § 1692e's prohibition on "false, deceptive, or misleading" representations and Section 1692e(10)'s prohibition on "false representation[s] or deceptive means to collect or attempt to collect any debt" when it misrepresented to Plaintiff that his "mortgage loan was in default when it was in fact current pursuant to the [LMA]." [60, ¶¶ 90, 92.] He alleges that Seterus violated "the character, amount, or legal status of any debt" in violation of Section 1692e(2)(A) by "misrepresenting the amounts [that] the mortgage loan was past due" because his loan "was current at all relevant times." *Id.* ¶ 91. He claims that Seterus violated Section 1692e(5), which prohibits a "threat to take any action that cannot legally be taken or that is not intended to be taken," when Seterus threatened to foreclose on his mortgage when Plaintiff "was current on the loan at the time" foreclosure was threatened. *Id.* ¶ 92. He also alleges that Seterus violated Section 1692f(1) by assessing default fees and late charges "not permitted by law or contract" because Plaintiff "was current on the mortgage loan." *Id.* ¶ 94.

In responding to Seterus's motion to dismiss the FDCPA claims, Plaintiff acknowledges that the "heart" of his complaint is "his claim for breach of contract." [74, at 14.] Because these claims turn on the existence of Plaintiff's LMA and that Plaintiff's full performance under its terms, all of these FDCPA claims fail. Plaintiff offers no alternative theory by which these claims could survive dismissal in the event that the Court concluded no LMA existed or he was in default over his continued failure to pay the monthly $591.42 escrow amount. Plaintiff does not maintain that Seterus's statements about the amount due on the loan, the fees that he was assessed, or the possibility of foreclosure were erroneous if he was, in fact, in default. Plaintiff's mortgage and note authorized late fees where Plaintiff did not pay the "full amount of any monthly payment" and other charges "for the purpose of protecting Lender's interest in the Property." [60-1, at 12; 60-2, at 2–3.] Plaintiff has failed to plead sufficiently plausible

17

allegations that the LMA was enforceable and he not in default. As a result, Plaintiff cannot state a claim that Seterus violated the FDCPA by misrepresenting details about his loan based on the LMA or took certain actions despite full compliance with the LMA. Count IV is dismissed.

### C.     RESPA (Counts VII and VIII)

Plaintiff alleges that Chase violated 12 C.F.R. §§ 1024.33(c)(2) and 1024.38(b)(4)(i), which are two federal regulations promulgated pursuant to RESPA. [60, ¶¶ 124–25.] He alleges that Chase's failure to promptly transfer his December 1, 2014 payment to Seterus violated Section 1024.33(c)(2), which requires "payments received incorrectly by the transferor servicer" to be transferred to "the transferee servicer for application to a borrower's mortgage loan account" or to be returned to the payor. 12 C.F.R. §§ 1024.33(c)(2)(i)–(ii). He claims that Chase did not "timely transfer information reflecting the current status of discussions concerning loss mitigation options with [Plaintiff] and/or any such loan modification agreement," which violated Section 1024.38(b)(4)(i). This provision requires the transferor servicer to

> timely transfer all information and documents in the possession or control of the servicer relating to a transferred mortgage loan to a transferee servicer in a form and manner that ensures the accuracy of the information and documents transferred and that enables a transferee servicer to comply with the terms of the transferee servicer's obligations to the owner or assignee of the mortgage loan and applicable law.

12 C.F.R. § 1024.38(b)(4)(i).

Plaintiff alleges that Seterus violated Section 1024.38(b)(4)(ii), the provision analogous to Section 1024.38(b)(4)(i) but that applies to transferee servicers. [60, ¶ 137.] He also claims that Seterus violated Sections 1024.35(d) and (i) by not providing "written acknowledgement" to Plaintiff within five days of receiving Plaintiff's May 16, 2016 Notice of Error and furnishing "derogatory and inaccurate information to credit reporting agencies." *Id.* ¶¶ 134–35; 12 C.F.R. § 1024.35(d) ("Within five days (excluding legal public holidays, Saturdays, and Sundays) of a

servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error."); *id.* § 1024.35(i) ("After receipt of a notice of error, a servicer may not, for 60 days, furnish adverse information to any consumer reporting agency regarding any payment that is the subject of the notice of error.").  Plaintiff further alleges that Seterus did not provide "written acknowledgement" to Plaintiff within five days of Plaintiff's May 10, 2016, request for information in violation of Section 1024.36(c).  In addition, Plaintiff alleges that both Defendants engaged in a "pattern or practice of noncompliance" with RESPA, which entitles him to statutory damages.  [60, ¶¶ 130, 140.]  The Court addresses each allegation below.

### 1. Section 1024.38 Claim

Chase and Seterus argue that Plaintiff's RESPA claims under Section 1024.38 must be dismissed because this section does not provide a private right of action.  That is the consensus of district courts across the country.  Accord *Elias v. Specialized Loan Servicing, LLC*, 2017 WL 1283497, at *3 (D.N.H. Apr. 5, 2017); *Neto v. Rushmore Loan Mgmt. Servs., Inc.*, 2017 WL 896890, at *6 n.5 (D. Md. Mar. 7, 2017); *In Re Wiggins*, 2016 WL 7115864, at *4 (Bankr. D.N.J. Dec. 6, 2016); *Jones v. Select Portfolio Servicing, Inc.*, 2016 WL 6581279, at *6 (N.D. Tex. Oct. 12, 2016); *Joussett v. Bank of Am., N.A.*, 2016 WL 5848845, at *4–5 (E.D. Pa. Oct. 6, 2016); *Ho v. Bank of Am., N.A.*, 2016 WL 8679254, at *2 (S.D. Fla. June 21, 2016); *Anderson v. Wells Fargo Home Mortg.*, 2016 WL 755615, at *7 (D. Minn. Feb. 25, 2016); *Smith v. Nationstar Mortg.*, 2015 WL 7180473, at *3–4 (E.D. Mich. Nov. 16, 2015); *Andrade v. Carrington Mortg. Servs., LLC*, 2015 WL 7108119, at *3 (W.D. Mich. Nov. 13, 2015); *Ivey v. Wells Fargo Home Mortg.*, 2015 WL 12826638, at *4–5 (W.D. Tenn. Sept. 28, 2015).  Plaintiff fails to respond to

this argument. [74, at 14–17.] Accordingly, his Section 1024.38 RESPA claims against Chase and Seterus are dismissed with prejudice. *Kirksey*, 168 F.3d at 1043.

### 2. Section 1024.33 Claim

Chase argues that Plaintiff's RESPA claim under Section 1024.33(c)(2) must be dismissed because he did not plead any facts showing that Chase failed to send the December 1, 2014 payment for $1,175.92 to Seterus. The amended complaint states that "upon information and belief," Chase did not transfer this payment. [60, ¶ 24.] "A party alleging matters peculiarly within another party's knowledge may plead those matters on 'information and belief.'" *FirstMerit Bank, N.A. v. Ferrari*, 71 F. Supp. 3d 751, 757 (N.D. Ill. 2014). However, Plaintiff attaches several documents to the complaint that undermine the plausibility of this "belief."

In particular, Plaintiff attaches his first account statement from Seterus dated December 19, 2014. [60-9.] The total listed under "past payment breakdown" is $1,175.92, suggesting that Plaintiff's December 1 payment was transferred by Chase to Seterus. *Id.* at 2. Plaintiff also attaches Seterus's April 29, 2016 letter, which provides a contractual payment history of Plaintiff's loan [60-14]. This payment history lists the outstanding principal balance at the time the loan was transferred to Seterus on December 1 (i*d.* at 4), while the outstanding principal balance listed on Plaintiff's December 19 account statement from Seterus shows that the principal has been reduced [60-9, at 2]. Plaintiff does not allege that he made any payments to Seterus between December 1 and December 19, 2014. However, Plaintiff's December 1 cancelled check to Chase for $1,175.92 shows that the check was deposited on December 12, 2014 [60-7, at 2.], and Seterus's payment history reflects a $1,175.92 payment on December 16, 2014 [60-14, at 7]. In short, all of the documents that Plaintiff attaches to his complaint suggest that Chase did transfer this payment.

Plaintiff's response does not discuss any of these documents or make any effort to bolster why his "information and belief" allegations are sufficient. Tellingly, Plaintiff does not explain why he cannot know whether his December 1, 2014 payment was applied to his mortgage when that information should be readily apparent from his account statements. Plaintiff does not allege that he ever communicated with Chase or Seterus about this payment or that they denied this transfer occurred. Nor does he identify any account statements showing that this amount was misapplied. "[A] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) ((citation and internal quotation marks omitted)). In light of the documents that Plaintiff attached to his own complaint and the absence of any facts suggesting that Chase kept this payment for itself, Plaintiff has failed to state a claim against Chase under Section 1024.33.

### 3. Section 1024.35 and 1024.36 Claims

Seterus argues that Plaintiff's claims under Sections 1024.35(d), 1024.35(i), 1024.36(c) must be dismissed because he does not plead any damages that could have resulted from these purported violations.[6] RESPA provides that a servicer is liable for "any actual damages to the borrower as a result of the failure" to comply with RESPA's provisions. 12 U.S.C. § 2605(f)(1)(A); accord *Hammer v. Residential Credit Sols., Inc.*, 2015 WL 7776807, at *23

---

[6] Courts are split over whether a private right of action exists under Section 1024.35. Compare *Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1007 (11th Cir. 2016) (private right of action exists); *Genid v. Fed. Nat'l Mortg. Ass'n & Seterus, Inc.*, 2016 WL 4150455, at *3 (D.N.J. Aug. 2, 2016) (same); *Frank v. J.P. Morgan Chase Bank, N.A.*, 2016 WL 3055901, at *5 (N.D. Cal. May 31, 2016) (same); with *Christenson v. CitiMortgage, Inc.*, 2017 WL 2377123, at *7 n.9 (D. Colo. June 1, 2017) (no private right of action); *Brown v. Bank of N.Y. Mellon*, 2016 WL 2726645, at *2 (E.D. Va. May 9, 2016) (same); *Willson v. Bank of Am., N.A.*, 2016 WL 8793204, at *8 (S.D. Fla. May 2, 2016) (same); *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 538 n.4 (E.D.N.Y. 2015) (same); *Miller v. HSBC Bank U.S.A., N.A.*, 2015 WL 585589, at *10–11 (S.D.N.Y. Feb. 11, 2015) (same). But Seterus does not raise this argument, so the Court assumes for purposes of this motion that such a cause of action does exist.

(N.D. Ill. Dec. 3, 2015) ("Recovery under RESPA requires more than establishing a violation; a plaintiff must suffer actual, demonstrable damages and the damages must occur 'as a result of' that specific violation."). "Failure to plead actual damages is fatal to a RESPA claim." *Lesniak v. Bank of Am., N.A.*, 169 F. Supp. 3d 766, 773 (N.D. Ill. 2015).

Plaintiff asserts—in a single sentence—that he has sufficiently pled actual damages "sustained as a result of Seterus's noncompliance" with these three sections of RESPA in the form of "emotional distress, inconvenience, mental anguish, postage and time." [74, at 17.] The Court starts with Plaintiff's claim for emotional distress and mental anguish. "[E]motional distress damages are available as actual damages under RESPA." *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 696 (7th Cir. 2011). Seterus contends, however, that a plaintiff must also suffer a financial loss from the RESPA violation to pursue emotional distress damages. [70, at 14–15 (citing *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 881 (7th Cir. 2001)).] Courts have agreed. See, *e.g.*, *Konieczka v. Wachovia Mortg. Corp.*, 2012 WL 1049910, at *4 (N.D. Ill. Mar. 28, 2012); *Lane v. Vitek Real Estate Indus. Grp.*, 713 F. Supp. 2d 1092, 1101 (E.D. Cal. 2010). Plaintiff offers to no response to Seterus's argument, and the Court interprets his silence to mean that he agrees with Seterus that this is the law.

Plaintiff does not claim that he suffered any economic injury from the Seterus's alleged failure to "acknowledge" in writing within five days that it had received his notice of error or request for information—let alone how this delay caused actionable emotional distress. See *Copeland v. Lehman Bros. Bank, FSB*, 2011 WL 9503, at *4 (S.D. Cal. Jan. 3, 2011) ("Plaintiff's allegations of emotional distress fail to indicate how the alleged failure to adequately respond to the [qualified written request] caused the distress."). Likewise, Plaintiff does not plead any economic impact on his credit based on the alleged furnishing of adverse information that

purportedly occurred in the 60 days after March 16, 2016. [See 60, ¶¶ 47–54]; cf. *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 590 (7th Cir. 2016) (holding that allegations that defendant's failure to provide a timely answer to the plaintiff's borrower inquiry caused plaintiffs to suffer damage to their credit were sufficient to avoid dismissal on the pleadings for standing purposes). The economic injury that Plaintiff allegedly suffered (*e.g.*, late charges, default fees, foreclosure-related costs, etc.) resulted from his default under his loan, not any purported RESPA violation. And the amended complaint even states that it was the "threat of losing his home" that caused his injury [60, ¶ 53], rather than the delay in responding to his notices under RESPA. Thus, Plaintiff's professed emotional distress damages are insufficient to plead actual damages for this RESPA claim.

Moving to Plaintiff's other damages categories, the amended complaint generally seeks damages for "[i]nconvenience (time spent attempting to resolve the situation)." [60, ¶ 54(d).] The Court does not know what this means in the context of his RESPA claim. Plaintiff does not describe any effort spent trying to resolve Seterus's failure to send timely acknowledgements. He also does not allege any inconvenience regarding the credit reporting that occurred in this 60-day post-notice period. To the extent Plaintiff uses the words "resolve" and "inconvenience" to mean filing a lawsuit, "[t]he costs of bringing a RESPA action do not constitute actual damages." *Konieczka*, 2012 WL 1049910, at *3 (dismissing complaint for failure to plead actual damages where plaintiffs alleged that they "expended substantial time, money and effort in attempting to correct [defendant's] mistakes, including the retention of two attorneys, the authorship of multiple letters, and the initiation of a complaint with the [Comptroller of the Currency]."). These allegations are too vague to plead actual damages under RESPA.

Finally, Plaintiff claims that he suffered $6.73 in postage costs. Plaintiff acknowledges that he did not include this category of damages in his amended complaint, but seeks leave to add them to a new amended complaint. [71, at 6 n.1.] "[A] court may deny leave to amend if the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss." *Crestview Vill. Apartments v. U.S. Dep't of Hous. & Urban Dev.*, 383 F.3d 552, 558 (7th Cir. 2004) (citation and internal quotation marks omitted). "'The decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court.'" *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (citation omitted). The Court sees no reason to permit this amendment.

Plaintiff asserts that "costs incurred by a borrower in mailing Notices of Error to servicers" qualify as "actual damages" under RESPA. [74, at 16 (citing *Marais v. Chase Home Fin., LLC*, 24 F. Supp. 3d 712, 728 (S.D. Ohio 2014).]. That is the extent of Plaintiff's analysis of this issue. However, as numerous courts have held, "[c]osts incurred after an incomplete or insufficient response are recoverable under RESPA, but 'costs incurred before the violation occurred, such as the expenses of preparing an initial request for information, cannot serve as the basis for actual damages.'" *Tanasi v. CitiMortgage, Inc.*, 2017 WL 2837477, at *25 (D. Conn. June 30, 2017) (citation omitted); accord *Sutton v. CitiMortgage, Inc.*, 2017 WL 122989, at *16 (S.D.N.Y. Jan. 12, 2017); *Giordano v. MGC Mortg., Inc.*, 160 F. Supp. 3d 778, 782 (D.N.J. 2016); *Zeich v. Select Portfolio Servicing, Inc.*, 2015 WL 10353128, at *2 (D. Or. Oct. 30, 2015); *Long v. Residential Credit Sols., Inc.*, 2015 WL 4983507, at *1 (S.D. Fla. Aug. 21, 2015); *Gorton v. Wells Fargo Bank NA*, 2012 WL 12887063, at *8 (C.D. Cal. Nov. 27, 2012); *Skaggs v. HSBC Bank USA, N.A.*, 2011 WL 3861373, at *15 (D. Haw. Aug. 31, 2011). These postage costs would have been incurred whether or not the servicer acknowledged the qualified written

request in five days and thus they cannot be "as a result of" a defendant's non-compliance with RESPA. 12 U.S.C. § 2605(f)(1)(A); see *Steele v. Quantum Servicing Corp.*, 2013 WL 3196544, at *8 (N.D. Tex. June 25, 2013). Antecedent mailing costs are not recoverable as "actual damages" under RESPA and Plaintiff's request to amend his complaint to add these costs is denied as futile. The three RESPA claims under Sections 1024.35 and 1024.36 are dismissed.

### 4. Statutory Damages

Both Defendants move to dismiss Plaintiff's RESPA claim for statutory damages based on a "pattern or practice" of RESPA non-compliance [63, at 16; 70, at 12–13]. Once again, Plaintiff does not respond to this argument. To state such a claim, some courts have required allegations sufficient to show that defendant's RESPA violations are a "standard or routine way of operating." *In re Maxwell,* 281 B.R. 101, 123 (Bankr. D. Mass. 2002) (citation omitted); accord *Renfroe v. Nationstar Mortg.*, LLC, 822 F.3d 1241, 1247 (11th Cir. 2016). Other courts require allegations of violations involving other borrowers. See *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013). The amended complaint does not contain these kinds of allegations for either Defendant. Plaintiff's assertions that Defendants' RESPA violations were part of a pattern or practice of non-compliance are entirely conclusory. [60, ¶¶ 130, 140.] Because Plaintiff failed to respond to Defendants' arguments, his claim for "pattern or practice" damages is dismissed with prejudice.

### D. ICFA (Counts V and VI)

The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (citation and internal quotation marks omitted). "To state a claim under the ICFA, Plaintiffs must allege

five elements: (1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) the damages were proximately caused by the defendant's deception." *Blankenship v. Pushpin Holdings, LLC*, 2015 WL 5895416, at *6 (N.D. Ill. Oct. 6, 2015); accord *Siegel*, 612 F.3d at 934–35. "The element of actual damages 'requires that the plaintiff suffer actual pecuniary loss.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (citation omitted).

A plaintiff may allege either deceptive or unfair conduct (or both) under ICFA. *Siegel*, 612 F.3d at 935; *Wigod*, 673 F.3d at 575 (7th Cir. 2012). For a business practice to be considered unfair, the Court considers "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002). A plaintiff does not need to satisfy all three criteria to support a finding of unfairness. *Id.* at 418. "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (citation and internal quotation marks omitted). "[W]hether a practice is unfair depends on a case-by-case analysis." *Siegel*, 612 F.3d at 935. An ICFA claim for unfair practices need only satisfy Rule 8(a). *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008).

Plaintiff alleges that each Defendant violated ICFA in different ways, so the Court addresses these allegations separately.

### 1. ICFA Claims Against Chase

Plaintiff alleges that Chase violated ICFA's unfairness prong because it (1) informed him of a $31.30 shortage of funds in his escrow account when no such shortage existed; (2) failed to

26

transfer the December 1, 2014 payment to Seterus; (3) failed to "timely" transfer information "reflecting the current status of discussions" with Plaintiff about his loan modification; and (4) informed Plaintiff that the LMA "had been received" and misrepresented that it had been forward to Seterus.  [60, ¶¶ 100–03.]

Plaintiff's first allegation fails because it is indistinguishable from his breach of contract claim.  ICFA "is 'not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy.'"  *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) (citation omitted).  Instead, a valid ICFA claim requires a plaintiff to allege "unfair or deceptive conduct [that is] distinct from the alleged breach of a contractual promise."  *Id.* at 400; see also *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 169 2005) ("A breach of contractual promise, without more, is not actionable under the [ICFA]."); *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 313 (2000) ("[B]ecause a naked breach-of-contract claim does not support a [ICFA] claim, plaintiff could not make his *prima facie* case simply by adducing evidence that defendants did not do what they promised.").  Whether or not Chase properly informed Plaintiff that he had a $31.30 shortage of funds turns on whether mortgage permitted Chase to estimate escrow shortages.  Chase contends that his mortgage allows these assessments [see 60-1, ¶ 8], but Plaintiff does not respond to this argument.  The Court does not see how this allegation is distinct from his contract claim.

Plaintiff's second allegation is dismissed because, as discussed above, Plaintiff has failed to plead sufficient facts showing that his December 1, 2014 payment was not transferred to Seterus.  This claim failed as a RESPA violation and is not pled any better as an ICFA claim.

Plaintiff's third ICFA allegation is foreclosed by the amended complaint itself.  The amended complaint states that Plaintiff contacted Defendant on January 13, 2015 at 4:20 p.m.

(*i.e.*, close to the close of business) to say that Seterus had no record of the LMA. [60, ¶ 31.] Chase called Plaintiff back *the next day* to say that it had faxed the LMA to Seterus and contacted an Assistant Vice President at Seterus about the issue. *Id.* ¶ 32. Under any reasonable definition, Chase's response was "timely." Plaintiff fails to allege how Chase's less than 24-hour response to Plaintiff's request was "unfair" under ICFA or how he suffered any economic damages from Chase's delay in sending the unenforceable LMA to Seterus. See *Alabi v. Homecomings Fin. LLC*, 2011 WL 4398140, at *7 n.12 (N.D. Ill. Sept. 21, 2011) ("ICFA allows remedies only for economic injuries, not for emotional distress.").

The same result is required of Plaintiff's fourth ICFA allegation. Seterus' April 29, 2016 letter states that its "records" show that "any modification" offered by Chase was "not executed prior to the service transfer of the loan." [60, ¶ 44.] Thus, according to the amended complaint and Seterus, Seterus *did* receive the LMA—it just failed to honor it. That in no way shows that Chase erroneously "inform[ed] [Plaintiff] that the [LMA] had been received" or "misrepresent[ed] that the [LMA] had been forwarded to Seterus." *Id.* ¶ 103. In any event, because Plaintiff has failed to plead facts showing that this contract was enforceable or that he was in compliance with its terms, he fails to plead any damages sustained by Chase's alleged erroneous statements that it had faxed the LMA to Seterus. Therefore, Count V is dismissed.

### 2.  ICFA Claims Against Seterus

Plaintiff alleges that Seterus violated ICFA's unfairness prong because it (1) failed to honor the LMA; (2) continued to collect on the mortgage loan after it was on notice of the LMA; (3) offered Plaintiff trial period payment plans on terms less favorable than the LMA; (4) advised Plaintiff that his loan terms were unmodified and he was in default; (5) "continuously fail[ed] to

properly apply" his payments; and (6) assessed him late charges and default fees even though he was current on his loan. [60, ¶¶ 112–17.]

Allegations one, two, four, five, and six simply restate Plaintiff's breach of contract claim. *Greenberger*, 631 F.3d at 399; [see 60, ¶¶ 68–71]. Plaintiff does not explain how these claims could stand on their own if the Court concluded that the LMA was not enforceable. Plaintiff does not dispute that all of Seterus' actions—assessing late fees, failing to honor the LMA, continuing to collect on his loan, considering him in default—were permitted by his underlying, unmodified mortgage. Plaintiff fails to show that Seterus' decision to collect on and enforce the terms of his mortgage "offends public policy," was "immoral, unethical, oppressive, or unscrupulous," or "causes substantial injury to consumers." *Robinson*, 201 Ill. 2d at 417; *Geske v. Fed. Nat'l Mortg. Ass'n*, 2015 WL 1397087, at *4 (N.D. Ill. Mar. 25, 2015) ("It is precisely the absence of any allegations that describe deceptive or unfair acts or practices—apart from Defendant's failure to perform under the loan modification agreement—that renders Plaintiffs' allegations insufficient."). As Plaintiff's contract claim is the "heart" of his amended complaint [74, at 7], it is apparent that the rest of Plaintiff's allegations cannot survive without it.

Plaintiff cannot fall back on his argument that these same acts "violated various sections of RESPA" [74, at 19], and therefore offend public policy. Most of his ICFA allegations are disconnected from his RESPA claims, which concern the failure to provide written acknowledgements, credit reporting, or not timely transferring information. For example, if "fail[ing] to honor" a LMA or advising Plaintiff that he is in default violates a provision of RESPA, Plaintiff does not say what that provision is. Regardless, Plaintiff has failed to state a claim under RESPA and thus cannot avail himself of RESPA to bootstrap his ICFA claim.

Allegation three likewise fails to state a claim under ICFA. Plaintiff fails to explain why it was "unfair" for Seterus to offer him a series of trial period payment plans that he did not accept. Plaintiff does not identify any public policy violated by these offers. Moreover, one of those modifications was for $1,151.18. [60, ¶ 35.] That is *only 78 cents* more than the payment amount that would have been required under the LMA had it been executed. Yet, for reasons unexplained by Plaintiff, he *refused* this offer. For conduct to be oppressive under ICFA, it must "leave the consumer with little alternative except to submit to it." *Robinson*, 201 Ill. 2d at 418; *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 834 (7th Cir. 2014) ("[T]his element is not satisfied if a consumer can avoid the defendant's practice by seeking an alternative elsewhere."). It is hard to view this or Seterus's other offers as "oppressive" if Plaintiff declined them. And Plaintiff does not contend that these unaccepted offers could have caused substantial injury to consumers. In sum, Plaintiff fails to persuade the Court that merely being offered—and rejecting—a loan modification only 78 cents more than the payments provided by his LMA constitutes actionable unfairness under ICFA. It plainly does not. Count VI is dismissed.

## IV. Conclusion

For the foregoing reasons, the Court grants Chase's motion to dismiss [62] and Seterus's motion to dismiss [69]. Plaintiff is given until August 18, 2017, to file a second amended complaint for those claims not dismissed with prejudice if he believes that he can cure the deficiencies set out above.

Dated: July 19, 2017

_____
Robert M. Dow, Jr.
United States District Judge